Pearson Hendrickson et al., appellants,

v.

Ezra Woolley, respondent.

1. The presumption is, that the mortgage first recorded is the first lien; and to overcome such presumption, it must be proved that the mortgagee of the mortgage first of record, at or before the time he took his mortgage, had knowledge of the existence of the mortgage first in date.

2. The notice, if any, must be taken with the qualifications attached to it by the agreement of the mortgagee of the unrecorded mortgage; and if such mortgagee has agreed with the mortgagor to keep his mortgage off the record, in order that the mortgagor may borrow more money on the property to be secured prior to such mortgage, and such agreement be made known to the mortgagee of the mortgage second in date, but first of record, at or before its execution, such notice will not give the unrecorded mortgage priority.

3. In such case the priority of the mortgage first in date is waived.

On appeal from a decree advised by Vice-Chancellor Van Fleet.

*Mr. Robert Allen, Jr.*, for appellants.

*Mr. James Steen*, for respondent.

The opinion of the court was delivered by

Parker, J.

On the 3d day of January, 1876, James Bell executed and delivered to Ezra Woolley a mortgage on lands in the county of Monmouth.

On the 15th day of February, 1881, Bell executed and delivered to Pearson Hendrickson, trustee of William R. Smock, another mortgage on the same premises.

The mortgage to Hendrickson was recorded on the 19th day of February, 1881, and the mortgage to Woolley on the 19th of April, 1881, being two months subsequent to the record of the Hendrickson mortgage.

In 1883, Woolley commenced foreclosure proceedings on his mortgage. He made Hendrickson a party, and claimed that at the time Hendrickson took his mortgage he had knowledge of the existence of complainant's mortgage.

The decree declares complainant's mortgage first in order of priority, and from this decree Hendrickson appeals.

The date of record of the respective mortgages makes Hendrickson's mortgage the first lien.

The presumption is, that the mortgage first recorded is the first lien; and to overcome such presumption, it must be proved that the mortgagee of the mortgage first of record knew, at or before the time he took his mortgage, of the existence of the mortgage first in date.

Does the evidence in this cause prove that Hendrickson, when he took his mortgage, or before that time, had any knowledge of the existence of the Woolley mortgage? It is not alleged that Woolley had given him such information, nor that any person except Bell (the mortgagor) had mentioned the existence of the Woolley mortgage to Hendrickson, until after Hendrickson had made the loan to Bell and taken his mortgage.

Bell swears that before the execution of the mortgage to Hendrickson he told him that Ezra Woolley had a mortgage on the property, which was not recorded. He says he told him this more than once, and particularly specifies a time, in Robert Allen's office, on the day the mortgage was drawn and before it was executed. He says that at that time he told Hendrickson, in the presence of Mr. Allen, that Woolley held an unrecorded mortgage on the premises.

Bell is contradicted by the testimony of Pearson Hendrickson, Robert Allen and William D. Campbell.

Mr. Hendrickson swears that Bell did not at any time previous to his loaning him the money and taking from him the mortgage therefor, say to him, or to any one in his presence, that Ezra Woolley had a mortgage on the premises in question, unrecorded or otherwise, but that Bell repeatedly told him that there was no encumbrance on the property except a mortgage for a small amount given to Dennis Valentine, which he would pay off out of the money he would receive from Hendrickson.

Hendrickson v. Woolley.

Hendrickson further says that he never heard of any mortgage on the property except the Valentine mortgage, until after he had taken his mortgage and had sent it to Freehold to be recorded.

Robert Allen swears that Bell and Hendrickson came to his office on the day the mortgage to Hendrickson was executed, and requested him to prepare the mortgage, and that before the mortgage was executed and the check for the money loaned given to Bell, he (Bell), in response to a question put by Allen, said to him, in the presence of Hendrickson, that there was no encumbrance on the property he was mortgaging to Hendrickson, except the Dennis Valentine mortgage.

William D. Campbell, to whom Bell originally applied to find the loan for him, and who introduced him to Hendrickson, swears that in conversation, in his presence, on the subject of the loan, Bell told Hendrickson that the Valentine mortgage was the only encumbrance on the property.

Bell is thus contradicted, upon the vital question of notice, by three witnesses.

The remaining testimony on this question relates to alleged declarations of Hendrickson, subsequent to the execution of his mortgage, as to his prior knowledge of the existence of the Woolley mortgage. That the declarations alluded to in such testimony were made is denied by Hendrickson in his evidence. In view of Hendrickson's denial, and the proof made by the witnesses before named, the complainant has failed to satisfy the court that Mr. Hendrickson had any knowledge of the existence of the Woolley mortgage prior to the time he loaned the money to Bell and took from him a mortgage therefor.

A fact in confirmation of this view is the small value of the property mortgaged. The weight of evidence is that the premises are not worth more than the amount due on the Woolley mortgage, interest and costs, and it is not probable that Hendrickson would loan on a second mortgage upon property of such small value.

But suppose Mr. Bell did inform Hendrickson of the existence of the Woolley mortgage, what did he say to him about it? The

whole conversation in which it is claimed that notice was given, should be considered, in order to ascertain if it was such notice as would give priority to the Woolley mortgage.

Bell swears that on the day he received the money from Hendrickson, and executed to him the mortgage to secure it, he told Hendrickson that he had spoken to Ezra Woolley about the loan he proposed to obtain on the property, and that Mr. Woolley did not make any objections; also that he told Hendrickson that there was an agreement between himself and Woolley that Woolley would keep his mortgage off of record. When Bell was asked if he then told Hendrickson that Woolley promised to keep his mortgage off the record so that Bell might borrow more money on the property, he made the evasive answer that he did not recollect of telling Hendrickson so at that time.

Now, if Bell did say anything to Hendrickson, before he executed the mortgage to him, about an unrecorded Woolley mortgage (which Hendrickson denies), it is clear, from Bell's testimony, that he gave Hendrickson to understand that Woolley, by agreement, had kept it off the record so that he (Bell) might borrow more money on the property, the security for which would be entitled to priority.

What Bell stated to Hendrickson in the absence of Mr. Woolley would not bind Woolley to the truth of the statement, but if the fact be that Woolley kept his mortgage off the record for the purpose of enabling Bell to borrow money on the security of the premises, and that such was the agreement between Bell and Woolley, then if Bell, before he gave the mortgage to Hendrickson, told him of the unrecorded Woolley mortgage, and also told him of the agreement to keep it off the record by Woolley, and the object thereof, the right of priority of his mortgage was waived by Woolley.

What does Bell's testimony show as to the alleged agreement with Woolley? Bell swears that there was an agreement between himself and Woolley, at the time he gave the mortgage, that Woolley should keep it off the record. When asked what was the reason given for such agreement, Bell said there were several reasons given, and one was that he did not want people

to know that his property was mortgaged. On being again asked for another reason, Bell answered thus: "I said to Mr. Woolley I might want to raise some money on the house, and I would probably have a chance to sell it, and I did not want anything standing against the property." In this connection Mr. Bell adds that he does not recollect promising Mr. Woolley to let him know before he put any other mortgage on the property. The following question was then put to Mr. Bell, viz.: "Did Ezra Woolley acquiesce in your arrangements or talk with him?" to which he replied, "Well, he made no objections; he smiled and said he guessed it would be all right." Mr. Bell further says that two or three days before he got the money of Mr. Hendrickson he went to see Mr. Woolley and asked him if he had any objection to his getting the money and leaving his mortgage second, and that Mr. Woolley replied that he was willing to do anything to help him.

Mr. Hendrickson says that after the execution of the Hendrickson mortgage, Mr. Woolley said to him that he had promised Bell he would not put his mortgage on record, as he (Bell) might want to borrow some more money.

Ezra Woolley, in his testimony, contradicts Mr. Bell and Mr. Hendrickson in reference to what they testified to about an agreement to keep his mortgage off of the record, yet when asked to explain why it was kept off the record so long, he said only by confidence in Bell, and added that it was kept off of record on account of its not looking well up there at Freehold on his property. Mr. Woolley further said that Bell requested him to keep the mortgage off the record at the time he delivered it over the counter to him in his store—that it did not look well on the record as long as he might want to sell. From the whole evidence on this part of the case, it is clear that there was an agreement between Mr. Woolley and Mr. Bell, at the time he gave the mortgage to Woolley, that Woolley should not record the mortgage, so that Bell might be enabled to sell or to borrow money on the premises upon security to be prior to his, and that when Bell was about procuring a loan from Hendrickson, Mr. Woolley knew of his efforts to obtain a loan and acquiesced in it,

Hendrickson v. Woolley.

saying, when asked "if he had any objection to his [Bell's] getting the money and leaving his [Woolley's] mortgage second," that "he was willing to do anything to help him [Bell.]"

Under these circumstances Woolley waived the priority of his mortgage if Bell told Hendrickson, before the execution of the mortgage to Hendrickson, what Bell says he did. So that, whether Bell on one side, or Hendrickson, Allen and Campbell on the other, be believed as to what was said by Bell to Hendrickson, before the execution of the mortgage to him, the mortgage to Hendrickson is entitled to priority over the Woolley mortgage.

If it be true that Bell did not tell Hendrickson about the Woolley mortgage, but said to him that there was no encumbrance on the premises except the Valentine mortgage, as Hendrickson, Allen and Campbell say he did, and if it be true that Hendrickson did not know of the existence of the Woolley mortgage until after the execution of the mortgage to himself, then the Hendrickson mortgage is entitled to priority.

Or, if it be true that Bell told Hendrickson, before he gave him the mortgage, of the existence of the Woolley mortgage, unrecorded, and said, also, that Woolley had agreed with him to keep his mortgage off of record, so that Bell could sell or borrow money on the premises on security which would be prior to Woolley's mortgage, and that what Bell said to Hendrickson about such agreement with Woolley was true, then Hendrickson's mortgage is still entitled to priority. Such qualified notice of the existence of an unrecorded mortgage, prior in date, is not such notice as is contemplated by law. The notice must be taken with all the qualifications attached to it under the agreement of the mortgagee of the unrecorded mortgage.

The decree is reversed.

For affirmance—DIXON, KNAPP, VAN SYCKEL—3.

For reversal—THE CHIEF-JUSTICE, DEPUE, PARKER, REED, SCUDDER, BROWN, CLEMENT, COLE, PATERSON, WHITAKER—10.